UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ROYA MASAEBI,

    Plaintiff,

v.

ARBY'S CORPORATION,

    Defendant.

Case No. 2:19-cv-5271
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth Preston Deavers

## OPINION & ORDER

Defendant Arby's Restaurant Group, Inc. ("Defendant" or "Arbys"), erroneously named in the Complaint as Arby's Corporation, has filed a Motion to Dismiss (ECF No. 8). Plaintiff Roya Masaebi ("Plaintiff") has filed a response (ECF No. 16) and Defendant has filed a reply (ECF No. 17). For the reasons stated herein, Defendant's Motion to Dismiss (ECF No. 8) is **GRANTED**.

### I.

As this matter is before the Court on Defendant's Motion to Dismiss, the allegations in the Complaint are taken as true and are as follows:

Plaintiff was born and raised in Persia, now Iran, and came to the United States many years ago. (Compl. ¶ 6, ECF No. 5.) On June 12 and 21, 2018, Defendant interviewed Plaintiff for a management position. (*Id.* ¶¶ 7, 10.) During these interviews, Plaintiff expressed her desire to become a corporate employee and use her master's degree in business administration. (*Id.* ¶¶ 8–9.) On June 21, 2018, Todd Richary, an Arby's supervisor, offered Plaintiff a general management position with a salary set higher than average due to Plaintiff's master's degree and several years of management experience. (*Id.* ¶¶ 11–12.)

Plaintiff began training for the management position on July 16, 2018. (*Id.* ¶ 13.) Defendant initially told Plaintiff that her training would occur in Pickerington, but later told her she would need to go to Chillicothe. (*Id.* ¶ 15.) Plaintiff explained to Richary that the location change created a problem due to an ongoing custody battle with her ex-husband for her son. (*Id.* ¶ 16.) Plaintiff worried that leaving her son alone would make her vulnerable in the custody battle. (*Id.* ¶ 17.) On August 8, 2017, Brynn Schnell and Beth Campbell, Arby's training managers, told Plaintiff she would be transferred to a Pickerington location. (*Id.* ¶ 18.) As Plaintiff continued her training, Schnell expressed dissatisfaction with Plaintiff's starting salary. (*Id.* ¶ 19.)

Part of Defendant's training program for management positions included a series of written tests. (*Id.* ¶ 20.) Plaintiff told Schnell that she required near-silence to take a written test because English is her third language. (*Id.* ¶ 22.) In response, Schnell said, "some people take longer to learn" and told Plaintiff if she did not pass the tests in six-months she would be moved down to an assistant manager position. (*Id.* ¶ 23.) Schnell also stated that if Plaintiff was moved down, she would be moved back up to her original position as soon as she passed the tests. (*Id.*)

Plaintiff was forced to take the first written test in a loud area with many interruptions. (*Id.* ¶ 24.) Plaintiff passed the first test on the second attempt and then passed an additional seven-week written test. (*Id.* ¶ 25.) Plaintiff was "making steady progress throughout her training and her employee records [bore] that out." (*Id.* ¶ 26.)

On August 17, 2018, while Plaintiff was managing a Pickerington store, she found a feather in a ham slider sandwich a shift manager was about to serve to a customer. (*Id.* ¶ 27.) Plaintiff showed the shift manager the feather. (*Id.* at ¶ 28.) The shift manager removed the piece of ham with the feather and served the remainder of the sandwich. (*Id.* ¶ 29.) Plaintiff believed this violated company policy, customers' trust, and local and/or state law. (*Id.* ¶ 30.) Plaintiff took a

photo of the feather and showed Schnell. (*Id.* ¶¶ 32–33.) To Plaintiff's knowledge, the employee who served the sandwich was never disciplined. (*Id.* ¶ 33.)

On August 21, 2018, Plaintiff was at a doctor's appointment chatting with a nurse drawing her blood. (*Id.* ¶ 34.) Plaintiff told the nurse about the feather she found in the ham slider sandwich. (*Id.* ¶ 35.)

On September 5, 2018, Plaintiff left work early due to a family emergency. (*Id.* ¶ 36.) After Plaintiff left, Schnell called to ask if she was alright. (*Id.* ¶ 37.) While talking, Schnell told Plaintiff she would not be fired for leaving early. (*Id.* ¶ 38.)

On September 14, 2018, Schnell and Campbell asked to speak with Plaintiff. (*Id.* ¶ 39.) Schnell began the conversation by asking Plaintiff if she wanted to hear a "funny story." (*Id.* ¶ 40.) Schnell told Plaintiff that while she was having her blood drawn during a doctor's appointment, a nurse said she heard a feather was found in a ham slider sandwich. (*Id.* ¶ 41.) Next, Schnell discussed Plaintiff's test results. (*Id.* ¶ 42.) Then, Schnell fired Plaintiff. (*Id.*)

After Plaintiff's termination, other Arby's managers told plaintiff that they have "no knowledge of anyone ever being terminated for the stated reasons and so abruptly." (*Id.* ¶ 44.) Plaintiff believes she was terminated in retaliation for reporting the feather incident and because of Defendant's animosity towards Middle Eastern immigrants. (*Id.* ¶¶ 45–46.)

Plaintiff filed the Complaint on November 27, 2019, asserting claims against Defendant for: (1) discrimination and retaliation in violation of Ohio Revised Code § 4112; (2) retaliation in violation of Ohio Revised Code § 4113.52; and (3) intentional infliction of emotional distress. (*Id.* ¶¶ 49–69.) Plaintiff seeks lost pay and benefits, compensatory and punitive damages, attorneys' fees and costs, and reinstatement and/or front pay. (*Id.* ¶ 70.) Defendant moved to dismiss all three claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which

relief may be granted. (Def.'s Mot. Dismiss at 1, ECF No. 8.) In response, Plaintiff seeks leave to amend her Complaint. (Pl.'s Resp. at 1, ECF No. 16.)

## II.

Federal Rule of Civil Procedure 12 authorizes dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To meet this standard, the complaint must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion to dismiss, the Court construes the complaint in the light most favorable to the non-moving party, accepting as true all of plaintiff's factual allegations. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

Nonetheless, the Court must read Rule 12(b)(6) in conjunction with Federal Rule of Civil Procedure 8(a), requiring a short and plain statement of the claim showing that the plaintiff is entitled to relief. *Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902, 907 (S.D. Ohio 2013). Thus, the pleading's factual allegations, assumed to be true, must do more than create mere speculation or suspicion of a legally cognizable claim; they must show entitlement to relief. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). Further, "the tenet that court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 662. As such, while a plaintiff is not required to set forth detailed factual allegations at the pleading stage, a complaint must contain a basis upon which relief can be granted; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *See id.* at 679;

Fed. R. Civ. P. 8(a).

### III.

Defendant moves to dismiss all claims under Rule 12(b)(6).

**A. Violation of Ohio Revised Code § 4112**

    **a. Discrimination**

Ohio Revised Code § 4112 provides that it is unlawful "[f]or any employer, because of the ... national original ... of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions or privileges of employment, or any matter directly or indirectly related to employment." OHIO REV. CODE § 4112.02(A). "[F]ederal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) *et seq.*, Title 42, U.S. Code, is generally applicable to cases involving alleged violations of [Ohio Revised Code §] 4112." *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981); *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004) (stating the same); *Martin v. Block Commc'ns*, No. L-16-1213, 2017 Ohio App. LEXIS 1480, at *13–14 (Ohio Ct. App. April 12, 2017) ("Ohio courts hold that federal case law interpreting Title VII of the Civil Rights Act of 1964 is generally applicable to state-law discrimination claims under [§] 4112.").

A plaintiff may establish a prima facie case of discrimination by presentation of direct or circumstantial evidence. *Talley v. Bravo Pitino Rest.*, 61 F.3d 1241, 1246 (6th Cir. 2017); *see also Bicudo v. Lexford Props.*, 812 N.E.2d 315, 326 (Ohio Ct. App. 2004) (noting that both federal law and Ohio law allow a plaintiff to establish an employer's intent through either direct or indirect evidence). When a plaintiff only alleges circumstantial evidence of discrimination, the *McDonnel-Douglas* burden-shifting framework applies. *See Ignatenkov v. United States Foodservice, Inc.*,

No. 1:11-cv-232, 2012 U.S. Dist. LEXIS 99553, at *13 (S.D. Ohio July 18, 2012) (applying *McDonnell-Douglas* to the plaintiff's claim under Title VII and § 4112.02 for discrimination based on national origin when plaintiff did not offer direct evidence of discrimination); *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010) (applying *McDonnel-Douglas* to a plaintiff's claim under Title VII for termination on account of his national origin, race, and religion when plaintiff offered no direct evidence of discrimination). In order to establish a prima facie case of discrimination a plaintiff must show: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified for the job; and (4) she was treated differently than similarly-situated, non-protected employees or that she was replaced by a person outside of the protected class. *See id.*; *Talley*, 61 F.3d at 1246; *Martin*, 2017 Ohio App. LEXIS 1480 at *14; *Younis.*, 610 F.3d at 363.

Importantly, however, the *McDonnel-Douglas* test is an evidentiary standard, rather than a pleading standard. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). "This is because discovery may unearth direct evidence of discriminatory intent, thereby making the *McDonnel Douglas* test—which is applicable only in the absence of such direct evidence—wholly irrelevant to the case." *Martin*, 2017 Ohio App. LEXIS 1480 at *16 (citing *Swierkiewicz*, 534 U.S. at 511–12). Thus, a plaintiff need not plead facts sufficient to establish each of the *McDonnel-Douglas* elements to survive a Rule 12(b)(6) motion to dismiss. *Id.*; *Witte v. Rippe & Kingston Sys.*, 358 F. Supp. 2d 658, 668 (S.D. Ohio 2005).

Instead, the plaintiff need only plead "a short and plain statement of the claim" to constitute fair notice under Rule 8(A). *Id.*; *Corywell v. Bank One Trust Co., N.A.*, 803 N.E.2d 781, 788–89 (Ohio 2017) (adopting *Swierkiewicz* and noting Ohio Rule 8(A)(1) mirrors the federal rules verbatim); *Morrissette v. DFS Servs., LLC*, No. 10AP-633, 2011 Ohio App. LEXIS 2023, at *13

6

(Ohio Ct. App. May 17, 2011) (holding the trial court improperly required a plaintiff to allege in his pleading what must be proved at the trial stage); *Jackson v. Int'l Fiber*, 863 N.E.2d 189, 195 (Ohio Ct. App. 2006) (finding the trial court erred in granting a motion to dismiss because while the plaintiff may not have established the prima facie case, the complaint stated a claim for relief for discrimination and thus, complied with Rule 8(A)).

Thus, the Court will evaluate the sufficiency of the Complaint by examining whether Plaintiff has provided a short and plaint statement of her national origin discrimination claim that gives Defendant fair notice of the grounds upon which the claim rests. *Witte*, 358 F. Supp. 2d at 669. Defendant argues Plaintiff's Complaint fails to state a claim for relief for discrimination because Plaintiff has not alleged any facts which would suggest Defendant considered her national origin when it terminated her employment or took any other action. (Def.'s Mot. Dismiss at 6.) Defendant argues that paragraph 46 of the Complaint which states Plaintiff "believes she may have been terminated based on her managers' animus toward Middle Eastern immigrants" is not sufficient. (*Id.*)

> Plaintiff, in response, points to paragraphs 22 through 24 of her Complaint stating:
>
> 22. English is [Plaintiff's] third language and she requires near silence during test taking, a requirement that was known to Arby's management virtually since the outset of her training and about which no one at Arby' ever raised an issue.
>
> 23. In fact, when [Plaintiff] raised these concerns, Schnell told her that "some people take longer to learn" and always assured [Plaintiff] that even if she [did] not pass[] all the required tests after she had been with Arby's [for] six months, she would simply be moved down to an assistant manager position until she passed all the tests.
>
> 24. Despite Arby's knowledge of, and acquiescence to, this requirement, she was forced to take the text in an area where other employees were located and she was distracted throughout the test taking by, among other things, loud employee conversations, cell phone calls, and general interruptions.

(Compl. ¶¶ 22–24.)

Defendant, in its reply, argues "these allegations in no way suggest that a similarly situated non-Middle-Eastern individual was treated more favorably than Plaintiff, or that Plaintiff was treated differently based on her self-described 'language barrier.'" (Def.'s Reply at 3.) Defendant's arguments are well-taken.

The complaint is devoid of any facts which could produce an inference that Defendant unlawfully considered Plaintiff's national origin when conducting her training, administering her tests, or terminating her. Similarly, the Complaint contains no facts which could support an inference that employees of non-Middle Eastern descent were treated differently. Even Plaintiff's statement that "[s]ubsequent to being [sic] terminating, [Plaintiff] [had] several Arby's managers tell her that they had no knowledge of anyone ever being terminated for the stated reasons and so abruptly" does not support an inference that therefore, Plaintiff's national origin was taken into account when terminating her. (Compl. ¶ 44.) According to the Complaint, the "stated reasons" were Plaintiff's test scores and her mention of the feather on the ham slider sandwich. (*See id.* ¶ 42.) Thus, the inference from this factual allegation is that Plaintiff was abruptly fired for her test scores or reporting a food issue, but other employees were not. There are no facts alleged that others of non-middle eastern dissent were not abruptly terminated for these issues.

Plaintiff states "some of the allegations could have been more artfully drafted," but the case should proceed so Plaintiff "will be able to explore her allegations based on her beliefs to determine the level of national origin animus of her supervisors and the role it played in her ultimate termination." (Pl.'s Resp. at 9.) Importantly, however, Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft*, 556 U.S. at 679. Plaintiff has not given Defendant the notice of the grounds on which her claim rests which Rule 8(A) requires. Plaintiff's response does not request leave to amend this claim.

The motion to dismiss Plaintiff's discrimination claim is GRANTED.

**b. Retaliation**

Ohio Revised Code § 4112 provides that it is unlawful to "discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing." OHIO REV. CODE § 411.02(I). As with claims of discrimination, federal case law interpreting Title VII of the Civil Rights Act of 1964 is generally applicable to cases involving retaliation in violation of Ohio law. *Plumbers & Steamfitters*, 421 N.E.2d 128, 131 (Ohio 1981); *Noble*, 391 F.3d at 720; *Martin*, 2017 Ohio App. LEXIS 1480 at *13–14.

In order to establish a claim under this section without direct evidence of retaliation a plaintiff must show (1) she engaged in protected activity; (2) the exercise of protected activity was known to the defendant; (3) plaintiff was subjected to an adverse employment action; and (4) there was a casual connection between the protected activity and the adverse employment action or harassment. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2017). Again, for purposes of a motion to dismiss, a plaintiff need not establish each element of the prima facie case because *McDonnel-Douglas* is an evidentiary standard, not a pleading standard. *Swierkiewicz*, 534 U.S. at 511; *Herman v. Ohio Univ.*, No. 2:19-cv-201, 2019 U.S. Dist. LEXIS 202813, at 22 (S.D. Ohio Nov. 22, 2019).

The Sixth Circuit has identified protected activity as including: complaining to management, unions, other employees, or newspapers about unlawful practices, refusing to obey an order the worker thinks is unlawful, or opposing unlawful acts by persons other than the employer such as former employers, unions, and co-workers. *Id.* at 579. "In order to engage in

9

protected opposition activity ... a plaintiff must make an overt stand against suspected illegal discriminatory action." *Motley v. Ohio Civ. Rights Comm'n*, No. 07AP-923, 2008 Ohio App. LEXIS 1958, at *5 (Ohio Ct. App. May 13, 2008); *Comiskey v. Auto. Indus. Action Grp.*, 20 F. Supp. 2d 877, 898 (E.D. Mich. 1999) (citing *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir, 1989)). A Plaintiff must allege protected activity in order to survive a motion to dismiss. *Krueger v. Home Depot USA, Inc.*, 674 F. App'x 490, 495 (6th Cir. 2017) ("The requirement that a protected activity be alleged is necessary to state a claim under [Kentucky's discrimination statute which is consonant with the Americans with Disabilities Act ("ADA")] and therefore, does not heighten the pleading standard or reflect a prima facie evidentiary standard.").

Defendant argues Plaintiff has not alleged she engaged in protected activity, for reporting the feather incident does not involve any discriminatory action or practice. (Def.'s Mot. Dismiss at 7–8.) In response, Plaintiff concedes this point and asks the Court for leave to amend the Complaint to label paragraphs 22 through 26 as in connection with Count I. (Pl.'s Resp. at 9.) Plaintiff argues that the issues she raised regarding her language barrier fulfill the requirement for engagement in protected activity. (*Id.*) Defendant argues even if Plaintiff were permitted to amend her Complaint, "raising concerns with a manager about 'requiring near silence during test taking' is not an activity opposing an unlawful discriminatory practice." (Def.'s Reply at 5.)

"A court need not grant leave to amend ... where amendment would be 'futile.'" *Miller v. Calhoun Cty*, 408 F.3d 803, 817 (6th Cir. 2005) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Id.* Importantly, in interpreting this Rule, "[i]t should be emphasized that the case law in this Circuit manifests liberality in allowing amendments

to a complaint." *Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018) (citation and internal quotation marks omitted).

Even if the Court were to permit an amendment, as amended, Plaintiff's Complaint would not survive a motion to dismiss. Plaintiff's contention that she discussed her language barrier with her supervisor is not taking an overt stand against discriminatory activity. Plaintiff does not allege any discriminatory activity or any facts which could raise an inference that any occurred. Thus, because as amended the Complaint would be dismissed, permitting amendment would be futile.

The Motion to Dismiss Count I is GRANTED and leave to amend Count I is DENIED.

**B. Violation of Ohio Revised Code § 4113.52**

In Plaintiff's Complaint, she claims that when Defendant terminated her because she reported the feather in the ham slider sandwich, it violated Ohio Revised Code § 4113.52. (Compl. ¶¶ 56–64.) Defendant seeks dismissal of this claim on, among others, statute of limitations grounds. (Def.'s Mot. Dismiss at 8–10.) In Plaintiff's response, she states she plead the wrong cause of action, and instead, has stated a claim for relief under the common-law action prohibiting terminating an at-will employee in violation of public policy. (Pl.'s Resp. at 10–11.) Thus, Plaintiff asks the Court for leave to amend the Complaint to change the cause of action from Ohio Revised Code § 4113.52 to Ohio common law. (*Id.*) Defendant argues the amendment should not be allowed because it would be futile. (Def.'s Reply at 6–9.)

"The Ohio Supreme Court has established a common-law cause of action for retaliation by an employer." *Davenport v. Big Bros. & Big Sisters of the Greater Miami Valley, Inc.*, No. 23659, 2010 Ohio App. LEXIS 2046, at *25 (Ohio Ct. App. June 4, 2010) (citing *Greely v. Miami Valley Maint. Contractors, Inc.*, 551 N.E.2d 981, 986 (Ohio 1990)). This cause of action is

11

available when an employee-at-will has been terminated in violation of a clear public policy. *Id.* In order to prove a plaintiff was violated in clear violation of public policy she must prove:

(1) Clear public policy existed and was manifested in a state or federal constitution, statute, or administrative regulation, or in the common law;

(2) Dismissing employees under circumstances like those involve in the plaintiff's dismissal would jeopardize public policy;

(3) The plaintiff's dismissal was motivated by conducted related to the public policy; and

(4) The employer lacked overring legitimate business justification for the dismissal.

*Id.* at 25–26; *Ignatenkov*, 2012 U.S. dist. LEXIS 99553 at *34–35; *Miracle v. Ohio Dep't of Veterans Servs.*, 137 N.E.3d 1110, 1113 (Ohio 2019)  The first two elements are treated as questions of law while the second two are treated as questions of fact. *Ignatenkov*, 2012 U.S. Dist. LEXIS 99553 at *35; *Miracle*, 137 N.E.3d at 1113.

The first task in determining whether a Complaint states a claim is to identify whether there exists a "clear public policy." *Collins v. Rizkana*, 652 N.E.2d 653, 658 (Ohio 1995). The "[p]laintiff is required to direct [the] Court to a clear public policy in order to sustain a common law public policy claim." *Nuovo v. Ohio State Univ.*, 726 F. Supp. 2d 829, 838 (S.D. Ohio 2009); *see also Blading-Margolis v. Cleveland Arcade*, 352 F. App'x 35, 46 (6th Cir. 2009) (noting the plaintiff alleging a common-law public policy claim must identify "a sufficiently clear public policy"); *Painter v. Graley*, 639 N.E.2d 51, 56 (Ohio 1994) ("Consistent with *Greely*, we hold today that to state a claim of wrongful discharge in violation of public policy, a plaintiff must allege facts demonstrating that the employer's act of discharging him contravened a 'clear public policy.'"). "The public policy in question must be plainly manifested within [a state or federal constitution, a statute or administrative regulation, or the common law], and the plaintiff must

identify the specific expression of public policy." *Neely v. Crown Solutions Co.*, No. 3:13-cv-109, 2014 U.S. Dist. LEXIS 35440, at *8 (S.D. Ohio Mar. 18, 2014) (internal citations omitted); *Painter*, 639 N.E.2d at 56 (A clear public policy can be discerned from "such sources as the Constitutions of Ohio and the United States, legislation, administrative rules and regulations, and the common law.").

Failing to meet this pleading burden is an appropriate ground for dismissal. *See id.* (dismissing the plaintiff's common-law public policy claim because while the plaintiff identified an Ohio statute and a number of Ohio administrative code sections, the cited law provided "too little to be said to constitute clear public policy"); *Miracle*, 137 N.E.3d at 1116 (affirming a court's motion to dismiss based on a plaintiff's inability to satisfy the clarity element of his wrongful discharge claim); *Painter*, 639 N.E.2d at 57 (dismissing claim for lack of clear public policy without addressing the other elements).

Plaintiff alleges she believed that serving food tainted by a feather violated state or local ordinances. (Comply. ¶ 31.) Defendant argues Plaintiff has not stated a claim for she has not provided which state or local ordinance she believes manifests the clear public policy, and, in fact there is no state or local ordinance manifesting a clear public policy against terminating an employee for complaining about a food-service issue. (Def.'s Reply at 7–8.)

To begin, this common-law cause of action is not available to employees terminated for whistleblowing. *Rheinecker v. Forest Lab.*, 813 F. Supp. 1307, 1313 (S.D. Ohio 1993). Thus, to the extent Plaintiff believes the clear public policy is found in Ohio's whistleblower statute, this does not state a claim for relief.

Other than the whistleblower statute, Plaintiff identifies no specific public policy which her termination allegedly puts in jeopardy. Plaintiff states she believes serving tainted food

violates a local ordinance or statute but does not identify any particular ordinance or statute, or the clear public policy embodied in such laws. Plaintiff has not alleged a sufficiently clear public policy from a statute, regulation, or constitution. *See Alexander v. Eagle Mfg. Co., LLC*, 714 F. App'x 504, 511 (6th Cir. 2017) (noting that if a plaintiff would like an opportunity to amend a complaint, it is the plaintiff's responsibility to provide details concerning the proposed amendment). Thus, even if the Court allowed Plaintiff leave to amend the Complaint the claim would still be dismissed and thus, amendment is futile.[1] The motion to dismiss is GRANTED and the request for leave to amend the complaint is DENIED.

### C. Intentional Infliction of Emotional Distress

Defendant argues Plaintiff's intentional infliction of emotional distress claim should be dismissed because Plaintiff does not allege factual allegations supporting extreme and outrageous conduct or serious emotional distress. (Def.'s Mot. Dismiss at 10–11.) In Plaintiff's response she states she "will not pursue the intentional infliction of emotional distress claim." (Pl.'s Resp. at 11.) Thus, Defendant's Motion to Dismiss this claim is GRANTED.

### IV.

For the reasons set forth above, Defendants' Motion to Dismiss (ECF No. 8) is **GRANTED**. The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED.**

_3-17-2020_
DATE

_____
EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**

---

[1] Additionally, Plaintiff did not attach a copy of an amended complaint. *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) (finding the trial court's decision to deny a plaintiff's motion to amend not an abuse of discretion because the plaintiff did not present an adequate motion and did not attach a copy of his amended complaint).